**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF FRANCIS CARR | No. 20 CR 370 |
| | Magistrate Judge Beth W. Jantz |

**MEMORANDUM OPINION AND ORDER**

Defendant Francis Carr is currently in the custody of the United States Marshals Service awaiting a hearing on the extradition request of the Government of Ireland to face a charge of dangerous driving causing the deaths of two victims. For the reasons discussed below, the Court grants the United States' motion to detain Carr, dkt. 7, 8, and denies Carr bail pending a decision on whether he will be extradited to Ireland.

**BACKGROUND**

Carr is a dual citizen of Ireland and the United States, who has been living in the United States most recently since December 2017. The following allegations are drawn from the Irish charge now pending against Carr, as well as the accompanying extradition request documents. In June 2017, in Ireland, Carr crashed his car into a pillar, causing the deaths of his two passengers. Witnesses said they saw Carr and passengers Sean Halloran and Orla O'Malley, leave a local pub after a night of drinking and socializing on June 4 around 3:30 a.m. The three got into a black Lexus in the pub's parking lot, and Carr drove the car away from the lot at a high speed. Approximately ten minutes later, other witnesses heard

what sounded like a car doing donuts and then a crash. One witness went to the scene of the crash and pulled Carr out of the driver's side of the Lexus.

A police officer who arrived on the scene observed a black Lexus positioned "at a right angle to the road and the passenger side of the vehicle was crushed against a farmyard block wall." Halloran died upon impact, and O'Malley died several hours later from injuries suffered in the crash. Scene witnesses pointed to Carr, who was sitting on house steps across the street, as another person who had been in the car. Carr told a paramedic that he was driving and "said he killed his friends." He was then taken to the hospital for treatment of his injuries, but no tests were done to establish the level of any alcohol in his system.

Ten days later, Irish police questioned Carr about the accident with his attorney present. Carr admitted that he owned the Lexus but said he could not remember what happened the night of the crash and guessed that he drove his own car that night. When questioned again about a week later, after having been booked at the police station, Carr maintained that he had no clear memory of much of that night but accepted that he was the driver of his own car.

On November 23, 2017, the Irish prosecutor issued a "directive" to charge Carr with dangerous driving causing the deaths of two victims, in violation of Ireland's section 53(1) of the Road Traffic Act of 1961, as amended. On February 14, 2018, Carr was formally charged with that offense, and the District Court Area of Castlebar, Ireland, issued a warrant for his arrest.

On January 30, 2019, pursuant to an extradition treaty between Ireland and the United States, Ireland submitted a formal request through diplomatic channels for Carr's arrest and extradition. *See* dkt. 1 at 26–27 (letter requesting extradition). On July 20, 2020, this Court issued an arrest warrant for Carr. Dkt. 5. On July 22, 2020, Carr was arrested and had his initial appearance on the complaint; the United States orally moved to detain Carr and filed a memorandum in support of detention pending the extradition proceedings. Dkt. 7, 8. On July 29, 2020, Carr filed a written response to the Government's motion for detention, dkt. 13, and oral argument was heard by this Court on July 31, 2020, dkt. 16. The Court commends both counsel for their helpful briefing and thorough and thoughtful oral arguments, especially on the expedited basis on which the bail hearing took place in this case.

Carr currently is in custody at the Metropolitan Correctional Center ("MCC") in Chicago.

## DISCUSSION

### I.    Relevant legal principles

International extradition proceedings are governed by 18 U.S.C. § 3184, a statutory scheme that does not address the issue of bail. The Supreme Court has recognized, however, that a defendant may be entitled to bail in an extradition case only if he shows that there are "special circumstances" warranting his release, and that bail "should not ordinarily be granted." *Wright v. Henkel*, 190 U.S. 40, 63 (1903). Bail is difficult to obtain in these matters because of the United States' important interest in complying with its treaty obligations: "[i]f the United States

were to release a foreign fugitive pending extradition and the defendant absconded, the resulting diplomatic embarrassment would have an effect on foreign relations and the ability of the United States to obtain extradition of its fugitives." *In re Extradition of Molnar*, 182 F. Supp. 2d 684, 687 (N.D. Ill. 2002).

Following *Wright*, courts have not precisely defined "special circumstances," but it is nonetheless clear that defendants face a high burden in extradition cases, and courts only infrequently grant bail. *Matter of Extradition of Budrys*, No. 19 M 179, 2019 WL 1958566, at *2 (N.D. Ill. May 2, 2019). Generally, "special circumstances are limited to circumstances in which the justification for release is as pressing as well as plain." *Matter of Extradition of Noeller*, No. 17 CR 664, 2017 WL 6462358, at *3 (N.D. Ill. Dec. 19, 2017) (alterations and internal quotation marks omitted). As evidenced by the word "special," these circumstances must be "extraordinary and not merely applicable to all defendants facing extradition." *Id.* at *4. Additionally, as the defense here correctly acknowledges, *see* dkt. 13 at 7, before the Court considers whether "special circumstances" are present such that bail is warranted, Carr must show that he is not a flight risk nor a danger to the community. *Budrys*, 2019 WL 1958566, at *2.

## II.     Carr is neither a flight risk nor a danger to the community.

In order to establish that he is not a flight risk, Carr relies on his open presence in the United States for two and a half years, the numerous ties he has to Chicago, and his cooperation with Irish and American authorities. Carr also contends that there is no evidence that he has attempted to avoid prosecution on

4

the charged offense. The Government counters that Carr is a flight risk because the timing of his departure from Ireland—and the fact that he has not returned since December 2017 despite having immediate family there—is suspicious, and that he is in flight by virtue of being in the United States instead of returning to Ireland to face the charge.

On this record, it is not clear that Carr knew of or attempted to avoid the prosecution for the Irish charge. Irish authorities did not authorize a charge against Carr until November 2017, four months after his last interview with police. According to Carr, he received only a ticket for the car accident in August 2017, and lived in London from August to December 2017 but was traveling back to Ireland "frequently" on weekends. Dkt. 13 at 4; *see* dkt. 13-2 (photo of ticket). He contends that he did not know the status of the investigation during that time. At the beginning of December 2017, before an arrest warrant had issued, Carr moved to Chicago (where he had spent some of his childhood and where some of his extended family lived), traveling under his own name. Even assuming that Carr knew about the potential for prosecution when he moved, he has been openly living and working in the United States for two and a half years, *see* dkt. 13-3 (evidence of open presence), and there is no evidence that he attempted to conceal his whereabouts from the relevant authorities or even knew of the charge from when it issued in February 2018 until his arrest on July 22, 2020.

Moreover, the Court recognizes that Carr is a United States citizen who has substantial ties to Chicago, including family and relationship ties. *See* dkt. 13-1

(letters from family and friends). And his relatives have offered to post security

should the Court be inclined to grant him bail pending a decision on extradition. In

light of his ties to the community and insufficient evidence establishing Carr's

avoidance of the charge, the Court concludes that Carr is not a flight risk and that

conditions of supervision exist that could secure his appearance in this case.

The Court further finds that Carr is not a danger to the community. The

Government largely rests its argument regarding dangerousness on the nature of

the charged offense. Although the charge is indeed serious, the Court notes that it is

not a volitionally violent offense, nor does Carr have a documented pattern of

engaging in similarly alleged conduct. Significantly, Carr has no other identified

criminal history. Accordingly, the Court declines to find Carr a danger to the

community.

### III.    Carr has failed to establish that "special circumstances" warrant his pre-hearing release.

Finding that Carr has satisfied the prerequisite showings that he is not a

flight risk nor a danger to the community, the Court now turns to whether Carr has

established "special circumstances." Carr posits six "special circumstances" that he

argues, whether viewed standing alone or in combination, warrant his pre-hearing

release: (1) no diplomatic necessity for detention exists given that the Irish Supreme

Court has disapproved of the "special circumstances" test and Irish courts routinely

grant bail in extradition cases; (2) no diplomatic necessity for detention exists given

that Ireland and the United States have failed to prioritize the prosecution of the

offense and Carr has lived openly in the United States for more than two and a half

6

years; (3) the prevalence of Covid-19 at the jail threatens his health, and the

current jail lockdown both hinders his ability to prepare his defense and weakens

the diplomatic rationale for detention; (4) he is a United States citizen who did not

know there was a pending criminal charge in Ireland; (5) he is likely to succeed at

his extradition hearing because the charged offense is not an extraditable offense;

and (6) his extradition hearing will address "unusually complicated legal questions"

and fact issues that will "likely take a significant period of time to resolve."

Dkt. 13 at 3.

The Court holds that Carr has not met his high burden to show that "special

circumstances" exist[1]—even if the alleged circumstances are viewed collectively—

and addresses in turn each of Carr's posited "special circumstances."

## A. Ireland's position regarding bail in extradition cases

Carr first argues that there is no diplomatic rationale to deny him bail

because Irish courts disapprove of the United States' "special circumstances" test in

extradition matters and routinely grant bail to defendants facing international

extradition. Courts in the United States vary over whether the availability of bail in

extradition proceedings in the country requesting extradition can constitute a

"special circumstance." *Compare United States v. Kollmar*, No. 19-mj-70677-MAG-1

---

[1] The Court recognizes that there is a split in authority regarding whether an extradition defendant must establish "special circumstances" by a preponderance of the evidence or by clear and convincing evidence. *See, e.g., In re Extradition of Beresford-Redman*, 753 F. Supp. 2d 1078, 1088 (C.D. Cal. 2010) (recognizing a split, but not deciding it). The Court need not decide which standard to apply because it determines that Carr has not met his burden under either standard.

(KAW), 2019 WL 2163005, at *3–5 (N.D. Cal. May 17, 2019) (finding evidence that Canada would grant extradition defendants bail for similar offenses, in a case involving charges more than twenty years old, was one of multiple "special circumstances" that collectively warranted bail), *and United States v. Taitz*, 130 F.R.D. 442, 446–47 (S.D. Cal. 1990) (concluding that availability of bail to defendant facing extradition to South Africa was one of several "special circumstances" that together warranted bail), *with United States v. Bowman*, No. 19-MJ-05089-JLB-1, 2020 WL 835342, at *4–5 (S.D. Cal. Feb. 20, 2020) (rejecting availability of bail for extradition defendants in charging country as "special circumstance"), *and Matter of Extradition of Drumm*, 150 F. Supp. 3d 92, 98 (D. Mass. 2015) (same for defendant facing extradition to Ireland).

The Court finds the reasoning of *Bowman* and *Drumm* to be more persuasive. Permitting an extradition defendant to obtain bail if a charging country would grant it would run counter to the United States' strong presumption against bail and could swallow the rule. *See Bowman*, 2020 WL 835342, at *5. Moreover, considering bail availability in the charging country as a "special circumstance" requires courts here to wade through a foreign country's law and speculate regarding whether bail would be granted for a similarly situated defendant. *See id.*; *see also Matter of Extradition of Rouvier*, 839 F. Supp. 537, 540–41 (N.D. Ill. 1993) (rejecting domestic bail availability in charging country as special circumstance in part because of the "searching review[ ] of foreign laws" required).

Here, Carr draws the Court's attention to numerous Irish cases where bail was granted to defendants facing extradition to the United States. The Court, however, is reluctant to extrapolate from those cases that bail would necessarily be granted to Carr in Ireland without further review of its law. Even assuming Carr is correct regarding Irish law, the Court does not find that the Irish practice of granting bail in extradition matters constitutes a "special circumstance," for the reasons discussed above. The fact that Ireland would grant bail under similar circumstances does not undercut the United States' strong preference for keeping extradition defendants in custody in order to fulfill its own treaty obligations. Each country is entitled to decide how it wants to handle extradition cases for itself, and this Court must apply the law as it is in the United States.

## B. Failure to prioritize prosecution of this offense

Carr next argues that the diplomatic rationale for detention is also undermined because Ireland and the United States have failed to make prosecuting his case a priority, citing the three-year delay between the car accident in Ireland and Carr's arrest in the United States. Contrary to this position, however, "[c]ourts generally consider delay a factor where the extradition hearing itself was delayed or the defendant's liberty interests were greatly affected." *Budrys*, 2019 WL 1958566, at *3.

To be sure, there were gaps between Carr's last police interview in June 2017 and the formal charge on February 14, 2018 (eight months); between the formal charge and Ireland's extradition request on January 30, 2019 (eleven months); and

9

the extradition request and Carr's arrest in this matter (July 22, 2020) (eighteen months). None of these gaps, however, demonstrate that Ireland or the United States dawdled in prosecuting this case to the extent necessary to find a "special circumstance." *See, e.g., Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1299–300 (S.D. Fla. 2017) (concluding two-year delay between defendant moving to United States and filing of extradition complaint was not "special circumstance"); *cf. United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 57–58 (D. Mass. 2010) (holding that delay was "special circumstance" where there was twenty-five-year delay in filing charges against defendant and additional three-year delay before seeking extradition); *Bowman*, 2020 WL 835342, at \*5 (granting bail when charged offenses occurred more than fifty years ago; Scottish government did not investigate the claims until four years after the victims' claims; and the Scottish government did not pursue extradition until three and a half years after obtaining an arrest warrant); *Kollmar*, 2019 WL 2163005, at \*3-5 (granting bail in case involving charges more than twenty years old).

Carr's citation to *In re Extradition of Chapman* to support his position that the three-year delay here is a "special circumstance" is distinguishable, as the court in that case relied not just on the delay but on a combination of factors to support its finding of "special circumstances," including the fact that the defendants

10

themselves had a television show in which they pursued fugitives.[2] 459 F. Supp. 2d 1024, 1027–28 (D. Haw. 2006).

Additionally, Carr has not demonstrated that the three-year delay here has adversely affected his liberty interests. *See Budrys*, 2019 WL 1958566, at *3. By Carr's own admission, he was living openly in Chicago for the past two and a half years. Now that he is in custody on the charge, the proceedings are moving promptly; the Court held a hearing on detention within ten days of his arrest and already has set a comprehensive briefing schedule on the merits. *See* dkt. 16, 17.

## C. COVID-19-related concerns

Carr next contends that the current public health situation is a "special circumstance," largely relying on the general risk that Covid-19 poses to his health. Carr is young (22 years old), and does not have any underlying health conditions recognized as high-risk factors.[3] Although the Court acknowledges the very real threat posed by Covid-19, it declines to find that it constitutes a "special circumstance" absent a showing of a specific risk to Carr's health.

---

[2] The defendants in *Chapman* were featured on the cable television program, "Dog: The Bounty Hunter," which at the time was the most popular show on A & E. 459 F. Supp. 2d at 1025.

[3] During the July 31, 2020 hearing, Carr affirmatively waived his right to privacy on this issue. He reported that he had tested positive for Covid-19 upon his arrest but later tests had come back negative for the virus. The Court notes that it is a scientifically open issue as to whether being infected with Covid-19 confers future immunity from the virus, but it is at least possible that Carr has less risk of contracting the disease if he has already had it. *See* Katherine J. Wu, *Scientists See Signs of Lasting Immunity to Covid-19, Even After Mild Infections*, N.Y. TIMES, Aug. 16, 2020, https://www.nytimes.com/2020/08/16/health/coronavirus-immunity-antibodies.html.

Other courts have similarly determined that generalized assertions of the risk of contracting Covid-19 in jail are insufficient to constitute "special circumstances" such that pre-hearing release would be appropriate. *See, e.g., Risner v. Fowler*, No. 3:19-cv-03078-N (BT), 2020 WL 2110579, at *4–5, 7 (N.D. Tex. May 1, 2020) (concluding that risk of contracting virus was not a "special circumstance" even for defendant with underlying health conditions); *Valentino v. U.S. Marshal*, No. 4:20-CV-304, 2020 WL 1950765, at *1–2 (S.D. Tex. Apr. 15, 2020) (finding no "special circumstance" where senior defendant did not present evidence of "immediate danger" to him of contracting virus). Carr cites *Matter of Extradition of Toledo Manrique*, No. 19-mj-71055-MAG-1 (TSH), 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020), as a contrary example, but that case is inapposite to Carr's situation—it involved a 74-year-old vulnerable person and was decided toward the beginning of the outbreak when it was unclear whether the jail at issue would be able to test for the virus. Thus, the Court concludes that Carr has not demonstrated his risk vis a vis Covid-19 at this time warrants pre-trial release.

As to Carr's argument that the difficulties in communicating with counsel and investigating his case during the pandemic are "special," the Court certainly appreciates that it is more difficult to communicate right now when jails have measures in place to prevent an outbreak. However, the Court is not persuaded that the additional restrictions make these concerns extraordinary to meet the standard for extradition bail. Although it now takes extra time and effort to set up phone calls with the jail because of the pandemic and no in-person visits are possible at

this time, phone calls are nevertheless still available. Indeed, the defense explained on the record that Carr and his counsel discussed this case in advance of the detention hearing twice by telephone.

Carr also argues that his placement in segregation pending being cleared as negative for Covid-19 undermines the diplomatic rationale for his detention, as Ireland disapproves of "solitary confinement." Dkt. 13 at 18–19. But, as discussed during oral argument, Carr's stay in segregation is temporary; there is no reason to expect that the MCC will seek to keep Carr in segregation once he has successfully completed his two-week quarantine. The Court declines to find that a two-week quarantine is a "special circumstance" justifying pre-trial release.

## D. Status as a United States citizen and a non-flight risk

Carr acknowledges that his fourth identified consideration—that he is a United States citizen and generally not a flight risk—has been rejected as a standalone "special circumstance." Dkt. 13 at 19–20. *See, e.g., Noeller*, 2017 WL 6462358, at *4. As Carr suggests, the Court has considered his United States citizenship and lack of flight risk in combination with the other identified circumstances, but nonetheless concludes that those considerations do not meet the difficult "special circumstances" standard warranting his pre-hearing release.

## E. Likelihood of success on the merits

"A high probability of success on the merits at an extradition proceeding" can constitute a special circumstance. *Budrys*, 2019 WL 1958566, at *4. Here, Carr

13

maintains that he has satisfied this standard by demonstrating that the charged offense is not extraditable. Under the extradition treaty between the United States and Ireland, the charged offense must be punishable by more than a year in prison under the laws of both countries in order to be extraditable. Dkt. 1 at 17. According to Carr, the Irish offense with which he has been charged—dangerous driving resulting in death—allows for a conviction if a person was merely negligent, while the Illinois counterpart requires a mental state of at least recklessness. Thus, he contends, the Irish offense is not a felony punishable by more than a year in prison under Illinois law and therefore is not extraditable.

The argument Carr raises certainly warrants further development, and the parties are currently briefing this issue for the Court's consideration on the merits. *See* dkt. 17. But the Court cannot determine that Carr has a "high probability" of success at this point in the proceedings. Carr himself states that this treaty issue is "a matter of first impression," dkt. 13 at 28, and his proffered argument is nuanced and involves parsing the treaty's language as well as both Irish and American law, *see id.* at 20–27.

Thus, even assuming that Carr has nonfrivolous legal defenses, he has not shown at this stage that they have such a high likelihood of success that they constitute a "special circumstance." *See Matter of Extradition of Taylor*, No. 20-MJ-1069-DLC, 2020 WL 3893049, at *4 (D. Mass. Jul. 10, 2020); *United States v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996) (per curiam).

### F. Anticipated length of extradition proceedings

Finally, Carr contends that his extradition proceedings are likely to take a considerable amount of time, in large part because he says he plans at this point to investigate the offense, challenge his extradition on multiple, complex grounds, and exhaust all appeals. Dkt. 13 at 27–29. This is not a case, however, in which the charge itself is overly complex such that lengthy proceedings are inevitable; there is a single count, and it is not clear that the evidence is particularly voluminous. *Cf. Taitz*, 130 F.R.D. at 445–46 (concluding that anticipated length of proceedings was "special circumstance" where defendant was charged with 434 counts of fraud in a complex case with voluminous evidence, and more than six months had already passed without the extradition hearing being held due to the complexity of the case).

And it is worth noting that the delay is merely hypothetical at this point. For instance, the Court has adopted, based on the parties' agreement, a bifurcated briefing schedule that has the potential to streamline these proceedings. *See* dkt. 17. Moreover, there are limitations on the extent to which an extradition defendant can present evidence in an extradition hearing contesting the underlying charge; a defendant cannot introduce contradictory evidence, rather he can only offer evidence that explains or clarifies the demanding country's proof. *Budrys*, 2019 WL 1958566, at *4. The Court notes that, although it has not addressed the issue yet, the Government asserts that most of the evidence Carr seeks to provide would be contradictory and thus inadmissible.

15

Therefore, the Court rejects potential for an extended delay as a "special circumstance" both because it is hypothetical at this point, and it would largely arise from Carr's own strategic decisions—as is certainly his right—to vigorously challenge his extradition. *See, e.g., Kin-Hong*, 83 F.3d at 525; *Berrocal*, 263 F. Supp. 3d at 1297–98.

## G. Combination of circumstances

Having explained its reasons for rejecting each of Carr's proposed "special circumstances," the Court determines that these circumstances, even when viewed together as a whole, are insufficient to meet the high burden Carr faces to justify his release from custody pending a decision regarding extradition. *See Budrys*, 2019 WL 1958566, at \*6. Overall, the United States has a significant interest in ensuring it fulfills its treaty obligations, and Carr has not shown that the delay— both prior to and potentially during his extradition proceedings—coupled with the hardships he will face in detention and his lack of flight risk are "special circumstances" setting him apart from other extradition defendants and warranting his release.

\* \* \* \* \*

The Court is not blind to the significant impact that detaining Carr will have, not only on him, but also on his family and friends. It undoubtedly already has and will continue to upend Carr's established life in the United States. But these are unfortunate realities that most extradition defendants experience. Given that Carr now faces continued detention while he contests his extradition from the

16

United States, the Court notes that Carr may have other options to seek a resolution of the Irish charge against him, perhaps directly through counsel in Ireland now, or waiving any further extradition proceedings here and being returned to Ireland expeditiously where he can again seek bail, *see, e.g., Berrocal*, 263 F. Supp. 3d at 1284.

## CONCLUSION

For the reasons discussed above, the Court grants the United States' motion to detain Carr, dkt. 7,8, and denies Carr bail pending the resolution of the extradition proceedings against him.

E N T E R:

Dated: August 18, 2020

BETH W. JANTZ
United States Magistrate Judge

17